Filed 10/1/15  Taft v. American Univ. of the Caribbean School of Medicine CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| FOSTER TAFT,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>AMERICAN UNIVERSITY OF THE CARIBBEAN SCHOOL OF MEDICINE, ET AL,<br><br>    Defendants and Respondents. | 2d Civil No. B260943<br>(Super. Ct. No. 56-2014-00447716-CU-FR-VTA)<br>(Ventura County)<br>MODIFICATION<br>NO CHANGE IN JUDGMENT |

THE COURT:

The opinion filed herein on September 22 is modified as follows:

 On page 8 the first names of the attorneys should read Dune and Patricia.

Attorneys for Respondent then should read McKasson & Klein, Neil B. Klein and Maria del Rocio Ashby.

NO CHANGE IN JUDGMENT.

Filed 9/22/15  Taft v. American Univ. of the Caribbean School of Medicine CA2/6 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| FOSTER TAFT,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>AMERICAN UNIVERSITY OF THE CARIBBEAN SCHOOL OF MEDICINE, et al.,<br><br>    Defendants and Respondents. | 2d Civil No. B260943<br>(Super. Ct. No. 56-2014-00447716-CU-FR-VTA)<br>(Ventura County) |

Foster Taft, proceeding in propria persona, appeals from the judgment of dismissal entered in favor of respondents American University of the Caribbean School of Medicine (American University) and Yife Tien.  The judgment was entered after the trial court had sustained respondents' demurrer to appellant's third amended complaint (complaint) without leave to amend.

The caption of the complaint shows two causes of action: fraud and wrongful dismissal from American University.  But the allegations of the complaint  show only a single cause of action for fraudulently misrepresenting why American University had dismissed appellant.  The complaint alleges, "The dismissal was fraudulent therefore it

[was] wrong."[1]  In his opening brief appellant states, "Since the wrongful dismissal is based on the dismissal being fraudulent, [citation] the cause of action referred to must be the fraud."

Appellant contends that the trial court erroneously concluded that the cause of action for fraud is time-barred.  Appellant was dismissed from American University in March 1993, but the action was not filed until January 2014.  Appellant argues that the action was timely filed because the discovery rule delayed accrual of the cause of action for fraud.  We affirm.

*Complaint's Allegations and Facts Appearing*

*In the 15 Exhibits Attached to the Complaint*

Appellant was enrolled as a student in American University, a medical school on a Caribbean island.  He had completed his first two years of classroom study and "had begun medical clerkship training" at a hospital in the United States.  On March 9, 1993, the hospital dismissed him from its clerkship program after he had been involved in an incident requiring the intervention of the hospital's security department.  In a letter dated March 10, 1993, the hospital wrote that faculty "had serious questions about [appellant's] interpersonal skills with faculty, peers and ultimately patients."  They also had "concerns about his academic suitability for remaining in [the hospital's] program."  "[A]round the time of [his] dismissal," appellant saw the hospital's letter.

After his dismissal from the clerkship program, respondent Yife Tien, a representative of American University, told appellant "that he had missed a meeting with the School's Dean."  Tien also "referred to a situation where [appellant] reported another student for making threats.  Yife Tien said that [appellant] had been warned in a letter that any kind of trouble could get [him] dismissed from [American University]."

---

[1] "[T]he allegations in the body of the complaint, not the caption, constitute the cause of action against the defendant.  [Citation.]"  (*Davaloo v. State Farm Ins. Co.* (2005) 135 Cal.App.4th 409, 418.)

In a letter dated March 22, 1993, the assistant dean of American University informed appellant that he had been dismissed. The letter stated: "This action was taken as a result of your difficulties at Providence Hospital. You were informed in a letter dated November 10, 1992, that you may be dismissed if you continued to have academic or non-academic difficulties." Appellant appealed the dismissal, but the president of American University upheld it.

In 2011 appellant applied for admission to the Medical College of Wisconsin, which required "letters from schools where applicants were subject to disciplinary action." Appellant requested a letter from American University, but it did not respond to his request.

In 2012 appellant made a second request for a letter. In January 2013 American University's "parent organization," DeVry Inc., replied: "Your request for a letter stating the purported reasons for your dismissal is respectfully denied." The reply "convinced [appellant] that the original representation of his dismissal from [American University] was fraudulent." "This discovery in January 2013, of [American University's] fraudulent action against plaintiff, tolled . . . the statute of limitation for his action."

In March 2013 appellant viewed his school records for the first time. He "was shocked to see criticisms of his religious observations[2] . . . , a statement regarding his complaints of harassment as trivial . . . , and a[] stunning assortment of derogatory, false, unqualified and defamatory comments by people that did not know [him] . . . . [Appellant] considered these [records to be] new discoveries."

Attached to the complaint is an unsworn statement by Nancy J. Heisel, M.D., American University's former assistant dean of students who wrote the letter of dismissal in 1993. Her statement is dated April 8, 2014. Heisel said that appellant "had destroyed the relationship [American University] had with one or two hospitals, making it so we

---

[2] Appellant was apparently referring to a confidential letter from a psychologist noting that, for religious reasons, appellant had refused to take an anatomy examination on a Saturday even though he is "apparently a Catholic and not a Seventh Day Adventist or Jewish." Thus, "his belief about the sanctity of Saturdays seemed rather idiosyncratic."

could no longer place students there." She further stated: "[T]here was no option but for [appellant] to be dismissed" because "[n]o hospital would accept him into a clerkship and there is no way to complete medical school without doing two years of successful clinic clerkships." Appellant alleged that the "no option" reason for dismissing him was "not communicated to him at the time of his dismissal." If he "had known this was [American University's] reasoning for dismissing [him], [h]e could and would have sought a position at the hundreds of hospitals in this country that had residency programs." The omission of the "no option" reason in the 1993 letter of dismissal is "direct proof of fraudulent dismissal."

Appellant claimed that his discovery of the "no option" reason for dismissing him "was another discovery to start the statute of limitations for this action." But the basis for his discovery, Heisel's unsworn statement, was made in April 2014, more than two months after appellant's original complaint had been filed in January 2014.

Appellant asserted that American University had "dismissed him because he felt he and others had individual rights and he acted on those beliefs." The dismissal occurred "after he did not back up a false report by a physician regarding a patient's death" and after he had made "a formal complaint about a medical student, in a clerkship, exhibiting threatening behavior." Moreover, respondents made him "get a psychiatric evaluation because he expressed concern for a psychiatric patient's rights and wanted the patient's consent before discussing an interview."

Appellant continued: "The fraudulent dismissal impaired [his] ability to continue his medical education. [H]e could not continue in [American University's] program, and it created unwarranted taint on his medical school record alienating other potential schools." As damages, appellant sought "[t]uition costs of $36,000" and "[l]ost earnings of $2,500,000."

*Trial Court's Ruling*

The trial court ruled that the "statute of limitations has run and [appellant] has not met [his] burden . . . to demonstrate that the discovery rule delayed the accrual of a cause of action." The court reasoned: "[Appellant] must have suspected that his dismissal was

wrongful because of [his] own allegations in his amended complaint about his dismissals and treatment.  [Appellant] has not alleged any facts that he made a reasonable investigation because of the dismissal and treatment, and if the investigation had been done, the facts that [appellant] now alleges and relies on for this suit were in his file, and the statute of limitations began to run in 1993."

### Standard of Review

"Because the function of a demurrer is to test the sufficiency of a pleading as a matter of law, we apply the de novo standard of review in an appeal following the sustaining of a demurrer . . . ."  (*California Logistics, Inc. v. State* (2008) 161 Cal.App.4th 242, 247.)  "[W]e assume the truth of all facts properly pleaded in the complaint and its exhibits or attachments, as well as those facts that may fairly be implied or inferred from the express allegations.  [Citation.]  'We do not, however, assume the truth of contentions, deductions, or conclusions of fact or law.'  [Citation.]"  (*Cobb v. O'Connell* (2005) 134 Cal.App.4th 91, 95.)  "If facts appearing in the exhibits contradict those alleged [in the complaint], the facts in the exhibits take precedence.  [Citation.]"  (*Holland v. Morse Diesel International Inc.* (2001) 86 Cal.App.4th 1443, 1447.)  On appeal, "[t]he plaintiff has the burden of showing that the facts pleaded are sufficient to establish every element of the cause of action and overcoming all of the legal grounds on which the trial court sustained the demurrer . . . ."  (*Martin v. Bridgeport Cmty. Ass'n, Inc.* (2009) 173 Cal.App.4th 1024, 1031.)

### The Cause of Action for Fraud is Time-Barred

A cause of action for fraud must be filed within three years after the cause of action accrued.  (Code Civ. Proc., § 338, subd. (d).)  "The cause of action . . . is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud . . . ."  (*Ibid*.)  "The discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action. . . . In other words, plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation.  (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807-

5

808.) "Simply put, in order to employ the discovery rule to delay accrual of a cause of action, a potential plaintiff who suspects that an injury has been wrongfully caused must conduct a reasonable investigation of all potential causes of that injury. If such an investigation would have disclosed a factual basis for a cause of action, the statute of limitations begins to run on that cause of action when the investigation would have brought such information to light." (*Id*., at pp. 808-809.)

"In order to rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.' [Citation.] In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to 'show diligence'; 'conclusory allegations will not withstand demurrer.' [Citation.]" (*Fox v. Ethicon Endo-Surgery, Inc.*, *supra*, 35 Cal.4th at p. 808.)

Appellant alleges he was injured in March 1993 when he was dismissed from American University. For almost 20 years, he did not investigate why he had been dismissed. In the 1993 letter of dismissal, American University said that he had been dismissed because of his "difficulties at Providence Hospital." But at the time of his dismissal, appellant had cause to suspect that the dismissal was based on other improper reasons. In his complaint appellant alleged that he had been dismissed "after he did not back up a false report by a physician regarding a patient's death" and after he had made "a formal complaint about a medical student, in a clerkship, exhibiting threatening behavior." Appellant also alleged that respondents had made him "get a psychiatric evaluation because he expressed concern for a psychiatric patient's rights and wanted the patient's consent before discussing an interview." Respondent Tien told appellant "that he had missed a meeting with the School's Dean." But appellant protested that he had not "received . . . notice of the Dean['s] meeting."

Appellant's knowledge of the above facts put him on inquiry notice of a potential cause of action against respondents for misrepresenting why American University had

6

dismissed him. Appellant has not alleged facts showing that, "despite diligent investigation of the circumstances of the [dismissal], he . . . could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period." (*Fox v. Ethicon Endo-Surgery, Inc.*, *supra*, 35 Cal.4th at p. 809.)

*No Abuse of Discretion in Not Granting Leave to Amend*

"[I]t is an abuse of discretion for the [trial] court to sustain a demurrer without leave to amend if the plaintiff has shown there is a reasonable possibility a defect can be cured by amendment. [Citation.]" (*California Logistics, Inc. v. State*, *supra*, 161 Cal.App.4th at p. 247.) The burden is on appellant to show an abuse of discretion. (*Stanson v. Brown* (1975) 49 Cal.App.3d 812, 814.) "[P]laintiff must show in what manner the complaint could be amended and how the amendment would change the legal effect of the complaint . . . ." (*Buller v. Sutter Health* (2008) 160 Cal.App.4th 981, 992.) Appellant has failed to make the required showing.

*Disposition*

The judgment is affirmed. Respondents shall recover their costs on appeal.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P. J.


PERREN, J.


7

Kent Kellegrew, Judge

Superior Court County of Ventura

_____

Foster Taft, in pro per, Plaintiff and Appellant.

Dane Morris, Patrixcia P. Hollenbeck and Heather U. Guerena, for American University, Defendant and Respondent.

McKesson & Klein, Neil B. Klein, for Paul Tien, Defendant and Respondent.